**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KUNAL SHANISHCHARA,<br><br>Plaintiff,<br><br>vs.<br><br>MODEL N, INC., BALJIT DAIL, TIM ADAMS, JASON BLESSING, KIMBERLY DECARLIS, MELISSA FISHER, MANISHA GULATI, ALAN HENRICKS, SCOTT REESE, and DAVE YARNOLD,<br><br>Defendants. | **Case No.: 3:24-cv-2994**<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Kunal Shanishchara ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Model N, Inc. ("Model N" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of

the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Vista Equity Partners ("Vista"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an April 8, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Vista will acquire all outstanding shares of Model N common stock for $30.00 per share in cash, implying a transaction value of approximately $1.25 billion.

3.     Thereafter, on May 3, 2024, the Company filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction. Thereafter, on May 15, 2024, the Company filed a Definitive Proxy Statement on form DEFM 14A with the SEC in support of the Proposed Transaction (together, the "Proxy Statement").

4.     The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own large illiquid blocks of Company stock which will be converted into merger consideration; (b) Company insiders own vested and unvested RSU awards, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (c) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.     The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial

projections for Model N, provided by Model N management to the Company Board, Strategic Review Committee of the Board of Directors (the "Special Committee"), and the Board's financial advisor, Jefferies LLC ("Jefferies"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Jefferies if any, and provided to the Company and the Special Committee.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## **PARTIES**

7.     Plaintiff is a citizen of North Carolina, and at all times relevant hereto, has been a Model N stockholder.

8.     Defendant Model N provides cloud revenue management solutions for life sciences and high-tech companies in the United States and internationally. The Company is incorporated in Delaware and has its principal place of business at 777 Mariners Island Boulevard, Suite 300, San Mateo, CA 94404. Shares of Model N common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "MODN."

9.     Defendant Baljit Dail ("Dail") has been a Director of the Company at all relevant times. In addition, Defendant Dail serves as the Chairman of the Board.

10.     Defendant Tim Adams ("Adams") has been a director of the Company at all relevant times.

11.     Defendant Jason Blessing ("Blessing") has been a director of the Company at all relevant times. In addition, Defendant Blessing serves as the Company's Chief Executive Officer ("CEO").

12.     Defendant Kimberly DeCarlis ("DeCarlis") has been a director of the Company at all relevant times.

13.     Defendant Melissa Fisher ("Fisher") has been a director of the Company at all relevant times.

14.    Defendant Manisha Gulati ("Gulati") has been a director of the Company at all relevant times.

15.    Defendant Alan Henricks ("Henricks") has been a director of the Company at all relevant times.

16.    Defendant Scott Reese ("Reese") has been a director of the Company at all relevant times.

17.    Defendant Dave Yarnold ("Yarnold") has been a director of the Company at all relevant times.

18.    Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19.    Non-Party Vista is an investment firm focused in enterprise software, data, and technology-enabled companies.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

COMPLAINT

1

2

3                        **SUBSTANTIVE ALLEGATIONS**

4    *Company Background*

5         23.    Model N provides cloud revenue management solutions for life sciences and high-

6    tech companies in the United States and internationally.

7         24.    In a press release on February 6, 2024, for the First Quarter 2024 Financial

8    Results, the Company highlighted its performance results and financial success. For

9    example: Total revenues were $63.5 million, an increase of 7% from the first quarter of

10   fiscal year 2023; Subscription revenues were $47.7 million, an increase of 8% from the

11   first quarter of fiscal year 2023; Gross profit was $35.6 million, an increase of 8% from the

12   first quarter of fiscal year 2023; Gross margin was 56% for the first quarter of fiscal year

13   2024 and 2023; Adjusted EBITDA was $9.9 million, an increase of 8% from the first

14   quarter of fiscal year 2023; and Adjusted EBITDA margin was 16% compared to 15% for

15   the first quarter of fiscal year 2023.

16        25.    Speaking on the results, Defendant CEO Jason Blessing stated, "Our first quarter

17   results beat expectations. We exceeded guidance for total revenue, subscription revenue,

18   professional services revenue and adjusted EBITDA."

19        26.    Defendant Blessing further stated, "Our strong performance in Q1 was driven by a

20   healthy contribution from all areas of the business. We signed new logos, closed one of our few

21   remaining SaaS transition, saw numerous customer base expansions, and we also enjoyed solid

22   renewals. As we look ahead, we continue to remain focused on driving profitable growth and I'm

23   optimistic about the year ahead."

24        27.    These financial results are not an anomaly, but rather, are indicative of a trend of

25   continued success by Model N. Based upon these positive results and outlook, the Company is

26   likely to have future success.

27

28

28.     Despite this upward trajectory, the Individual Defendants have caused Model N to enter into the Proposed Transaction without providing requisite information to Model N stockholders such as Plaintiff.

***The Flawed Sales Process***

29.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

30.     The Proxy Statement fails to disclose Management's reason for creating a Four Year Forecast for due diligence purposes during the effort to sell the Company, but then creating the so-called Company Projections used by Jefferies in its Financial Analyses. Further, the Proxy Statement fails to disclose all specific manner in which the two sets of projections differed.

31.     The Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Vista, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so, in all specific manners.

32.     Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.     On April 8, 2024, Model N and Vista issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> SAN MATEO, Calif.--(BUSINESS WIRE)-- Model N (NYSE: MODN), a leader in revenue optimization and compliance for pharmaceutical, medtech, and high-tech innovators, today announced that it has entered into a definitive agreement to be acquired by Vista Equity Partners ("Vista"), a leading global investment firm focused exclusively on enterprise software, data, and technology-enabled businesses.

Under the terms of the agreement, Vista will acquire all the outstanding shares of Model N common stock for $30.00 per share in an all-cash transaction valued at approximately $1.25 billion. The purchase price represents a premium of approximately 23% over Model N's 30-trading-day volume weighted average share price as of the close on January 10, 2024, the day prior to the Model N Board of Directors authorizing its financial advisor to contact potential acquirors, and a premium of approximately 16% over Model N's 30-trading-day volume weighted average share price as of the close on April 5, 2024.

"We are pleased to have reached this agreement with Vista, which is the culmination of a robust sale process led by our Board of Directors with the assistance of our financial and legal advisors," said Baljit Dail, Chairman of the Model N Board. "As the Board considered the long-term path for Model N, we unanimously determined that the transaction with Vista represents the best opportunity to deliver compelling, certain, and immediate cash value to our stockholders and is in their best interest in light of the challenges faced by Model N as a standalone public company."

Jason Blessing, Model N President and Chief Executive Officer, said, "The need for revenue optimization and compliance solutions that deliver comprehensive visibility and control is greater than ever. As a private company under Vista's ownership, we will have the added resources to navigate this dynamic market and drive ARR growth for the long term. Vista understands our strengths, culture, and customer-centric philosophy as we position our company to capture market opportunities and accelerate our global impact."

"Model N is a pioneer in revenue management solutions for the life science and advanced technology industries," said Michael Fosnaugh, Co-Head of Vista's Flagship Fund and Senior Managing Director. "They've built a strong reputation through a straightforward formula – offering mission-critical products to help maximize revenue growth within some of the most important and innovative companies in the world."

"Model N enables leading life science and advanced technology companies to optimize their commercialization and compliance processes with mission-critical products specifically designed to address the complexities of these dynamic markets," said Nick Prickel, Senior Vice President at Vista. "We look forward to working closely with the Model N team as they embark on this exciting next chapter."

**Transaction Details**

The transaction is expected to close in mid-2024, subject to customary closing conditions, including approval by Model N stockholders and clearance under the Hart-Scott-Rodino (HSR) Antitrust Improvements Act of 1976. Upon completion

of the transaction, Model N will become a privately held company and shares of Model N common stock will no longer be listed on any public market.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicates that Model N insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Model N.

36.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Shares Beneficially Owned (#) | Cash Consideration for Shares Beneficially Owned ($) |
|---|---|---|
| Jason Blessing | 389,689 | 11,690,670 |
| John Ederer | 42,117 | 1,263,510 |
| Mark Anderson | 101,964 | 3,058,920 |
| Suresh Kannan | 70,324 | 2,109,720 |
| Chris Lyon | 59,149 | 1,774,470 |
| Tim Adams | 27,048 | 811,440 |
| Baljit Dail | 55,665 | 1,669,950 |
| Kimberly DeCarlis | 11,605 | 348,150 |
| Melissa Fisher | 52,211 | 1,566,330 |
| Manisha Shetty Gulati | 7,640 | 229,200 |
| Alan Henrick | 29,355 | 880,650 |
| Scott Reese | 26,840 | 805,200 |
| Dave Yarnold | 22,012 | 660,360 |

37.     Additionally, Company insiders currently own large amounts of Vested RSU Awards, Unvested RSU Awards, and other equity awards, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Vested Company RSU Awards (#) | Cash Consideration for Vested Company |
|---|---|---|

| | RSU Awards (#) | RSU Awards ($) |
|---|---|---|
| Jason Blessing | — | — |
| John Ederer | — | — |
| Mark Anderson | — | — |
| Suresh Kannan | — | — |
| Chris Lyon | — | — |
| Tim Adams | 5,382 | 161,460 |
| Baljit Dail | 5,896 | 176,880 |
| Kimberly DeCarlis | 4,883 | 146,490 |
| Melissa Fisher | 4,994 | 149,820 |
| Manisha Shetty Gulati | 4,827 | 144,810 |
| Alan Henrick | 5,327 | 159,810 |
| Scott Reese | 4,994 | 149,820 |
| David Yarnold | 5,105 | 153,150 |

| Name | Unvested Company RSU Awards (#) | Contingent Cash Consideration for Unvested Company RSU Awards ($) |
|---|---|---|
| Jason Blessing | 236,388 | 7,091,640 |
| John Ederer | 157,033 | 4,710,990 |
| Mark Anderson | 95,283 | 2,858,490 |
| Suresh Kannan | 108,252 | 3,247,560 |
| Chris Lyon | 120,964 | 3,628,920 |
| Tim Adams | — | — |
| Baljit Dail | — | — |
| Kimberly DeCarlis | — | — |
| Melissa Fisher | — | — |
| Manisha Shetty Gulati | — | — |
| Alan Henrick | — | — |
| Scott Reese | — | — |
| David Yarnold | — | — |

| Name | Company PRSU Awards (#) | Contingent Cash Consideration for Company PRSU Awards ($) |
|---|---|---|
| Jason Blessing | 189,512 | 5,685,360 |
| John Ederer | 82,065 | 2,461,950 |
| Mark Anderson | 47,684 | 1,430,520 |
| Suresh Kannan | 55,953 | 1,678,590 |
| Chris Lyon | 62,226 | 1,866,780 |

38.     Moreover, certain employment agreements with certain Model N executives entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be

paid out as follows:

| Named Executive Officer | Cash($)[1] | Equity Awards($)[2] | Heath Insurance Premiums($)[3] | Total($) |
|---|---|---|---|---|
| Jason Blessing | 1,391,250 | 12,777,000 | 69,186 | 14,237,436 |
| John Ederer | 668,250 | 7,172,940 | 34,593 | 7,875,783 |
| Mark Anderson | 589,050 | 4,289,010 | 20,340 | 4,898,400 |
| Suresh Kannan | 646,400 | 4,926,150 | 2,537 | 5,575,087 |
| Chris Lyon | 798,000 | 5,495,700 | 29,627 | 6,323,327 |

| Named Executive Officer | Base Salary Component of Severance($) | Bonus Component of Severance($) | Total($) |
|---|---|---|---|
| Jason Blessing | 834,750 | 556,500 | 1,391,250 |
| John Ederer | 405,000 | 263,250 | 668,250 |
| Mark Anderson | 357,000 | 232,050 | 589,050 |
| Suresh Kannan | 404,000 | 242,400 | 646,400 |
| Chris Lyon | 399,000 | 399,000 | 798,000 |

39.     The Proxy Statement fails to adequately all communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Model N, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

41.     The Model N Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy Statement fails to disclose:

      a.     Disclose Management's reason for creating a Four Year Forecast for due diligence purposes during the effort to sell the Company, but then creating the so-called Company Projections used by Jefferies in its Financial Analyses. Further, the Proxy Statement fails to disclose all specific manner in which the two sets of projections differed;

      b.     Whether the confidentiality agreements entered into by the Company with Vista differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties; and

      c.     Adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Model N Financial Projections*

43.     The Proxy Statement fails to provide material information concerning financial projections for Model N provided by Model N management to the Company Board and Jefferies and relied upon by Jefferies in its analyses.  The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

44.     Notably, the Proxy Statement reveals that as part of its analyses, Jefferies reviewed: "certain information furnished to Jefferies and approved for Jefferies' use by Model N's management, including financial forecasts and analyses, relating to the business, operations and prospects of Model N."

45.     The Proxy Statement should have, but fails to provide, certain information in the projections that Model N management provided to the Company Board and Jefferies.  Courts have

uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

46.     With regard to the *Projections*, the Proxy Statement fails to disclose:

    a.   The inputs, metrics, and assumptions used to determine Total Revenue;

    b.   The inputs, metrics, and assumptions used to determine Total Gross Profit;

    c.   The inputs, metrics, and assumptions used to determine Operating Income;

    d.   The inputs, metrics, and assumptions used to determine Adjusted EBITDA; and

    e.   The inputs, metrics, and assumptions used to determine Unlevered Free Cash.

47.     The Proxy Statement states that Company Management created a Four Year Forecast which was provided to the Board, the Special Committee, and Jefferies, which were later updated to reflect the company's fiscal 2023 results and preliminary results from the first quarter of fiscal 2024 and provided to interested parties for any due diligence review in relation to a strategic process. However, the Proxy Statement fails to disclose both the Four Year Forecast and the Updated Four Year Forecast, as well as all specific manners in which they differ from the Projections provided to Jefferies for us in its Financial Analyses.

48.     The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Jefferies' financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed

1  Transaction.  As such, the Board has violated the Exchange Act by failing to include such

2  information in the Proxy Statement.

3       *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*

4  *Jefferies*

5      51.    In the Proxy Statement, Jefferies describes its fairness opinion and the various

6  valuation analyses performed to render such opinion. However, the descriptions fail to include

7  necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

8  assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations

9  or evaluate the fairness opinions.

10      52.    With respect to the *Selected Public Companies Analysis*, the Proxy Statement fails

11  to disclose:

12      a.   The inputs, metrics, and assumptions used to determine the CY 2024E Revenue

13          utilized for each of the selected companies;

14      b.   The inputs, metrics, and assumptions used to determine the CY 2025E Revenue

15          utilized for each of the selected companies;

16      c.   The specific inputs, metrics, and assumptions used to determine the CY 2024E

17          EBITDA utilized  for each of the selected companies;

18      d.   The specific inputs, metrics, and assumptions used to determine the CY 2025E

19          EBITDA utilized  for each of the selected companies;

20      e.   The specific inputs, metrics, and assumptions used to determine the CY 2024E

21          Revenue multiples range of 4.0x to 6.0x utilized;

22      f.   The specific inputs, metrics, and assumptions used to determine the CY 2025E

23          Revenue multiples range of 3.5x to 5.5x utilized;

24      g.   The specific inputs, metrics, and assumptions used to determine the CY 2024E

25          EBITDA multiples range of 14x to 22x utilized; and

26      h.   The specific inputs, metrics, and assumptions used to determine the CY 2025E

27          EBITDA multiples range of 11x to 20x utilized.

28

53. With respect to the *Selected Transactions Analysis*, the Proxy Statement fails to disclose:

      a. The date upon which each of the selected transactions closed;

      b. The inputs, metrics, and assumptions used to determine the LTM Revenue Multiple for each of the selected precedent transactions;

      c. The specific inputs, metrics, and assumptions used to determine the LTM EBITDA multiple for each of the selected precedent transactions;

      d. The specific inputs, metrics, and assumptions used to determine the LTM Revenue multiples range of 3.0x to 6.0x utilized;

      e. The specific inputs, metrics, and assumptions used to determine the LTM EBITDA multiples range of 15x to 22x utilized; and

      f. The number of fully diluted shares of Model N common stock outstanding utilized.

54. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

      a. The inputs, metrics, and assumptions used to determine the perpetuity growth rates ranging from 3.5% to 5.5% utilized;

      b. The inputs, metrics, and assumptions used to determine the discount rates of 10.0% to 11.0% utilized;

      c. The estimated present value of the stand-alone unlevered free cash flows the Company was forecasted to generate during the fiscal years ending September 30, 2024, through 2029, and the inputs, metrics, and assumptions used to determine same; and

      d. The weighted average cost of capital for the Company utilized.

55. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Model N stockholder.   As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

57.     Plaintiff repeats all previous allegations as if set forth in full herein.

58.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78$l$ of this title.

60.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

64.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants

1    knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his

2    capacity as a Company stockholder.

3        67.    The Individual Defendants were involved in drafting, producing, reviewing and/or

4    disseminating the materially false and misleading statements complained of herein.  The Individual

5    Defendants were aware or should have been aware that materially false and misleading statements

6    were being issued by the Company in the Proxy Statement and nevertheless approved, ratified

7    and/or failed to correct those statements, in violation of federal securities laws.  The Individual

8    Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual

9    Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy

10   Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause

11   it to be corrected.

12       68.    The Individual Defendants also were able to, and did, directly or indirectly, control

13   the conduct of Model N's business, the information contained in its filings with the SEC, and its

14   public statements.  Because of their positions and access to material non-public information

15   available to them but not the public, the Individual Defendants knew or should have known that

16   the misrepresentations specified herein had not been properly disclosed to and were being

17   concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result,

18   the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore

19   responsible and liable for the misrepresentations contained herein.

20       69.    The Individual Defendants acted as controlling persons of Model N within the

21   meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the

22   Individual Defendants had the power and authority to cause Model N to engage in the wrongful

23   conduct complained of herein.  The Individual Defendants controlled Model N and all of its

24   employees.  As alleged above, Model N is a primary violator of Section 14 of the Exchange Act

25   and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to

26   section 20(a) of the Exchange Act.

27

28

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 17, 2024

**BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

COMPLAINT